Jenkin B. Hockert, Acting J.
This is an action tried by the court without a jury, both sides having waived a jury.
The plaintiff is suing on a personal property floater binder issued by the defendant insurance company. The binder contains the same terms as a previous policy issued to the plaintiff.
*698 The defendant concedes that on August 11, 1955, while the binder was in full force and effect, that there was a severe wind and rain storm and that as a result thereof plaintiff suffered some damage. The defendant contends that the main items of loss are not covered by insurance because of the following clause in the policy: “ This policy does not insure: b) Unscheduled property pertaining to a business, profession or occupation of the persons whose property is insured hereunder, excepting professional books, instruments or other professional equipment owned by the Assured while actually within the residences of the Assured.”
This case, therefore, poses three problems. First, is the plaintiff a professional man? Second, is the property damaged within the category of ‘ ‘ professional books, instruments and other professional equipment ”? Third, the value of the articles damaged within the second problem.
The plaintiff testified that he took a four-year course at Cooper Union in industrial designing. He received a diploma, but not a degree. After graduation, he engaged in the decoration of interiors of all kinds of buildings, homes, theatres, synagogues, and also designed articles for manufacture, such as mowers, sprinkler systems, etc. The plaintiff resided in a residential section of Queens and altered the premises to include a studio where he set up an office which was in the basement of his home. Here, he claims to have employed draftsmen and other help in carrying on his work. In addition thereto, he had a factory some distance away where he manufactured kitchen cabinets, etc. The plaintiff was also engaged in a business of a general contractor.
The various exhibits included sketches made by the plaintiff, magazine articles depicting his activities, all indicating that he was no ordinary interior decorator. An architect testified as to the type of work performed by the plaintiff. The use in the policy of the words “ profession ” and “professional” envisions the understanding of such terms as may be reasonably expected by the ordinary purchaser of fire insurance, and that any ambiguity in an insurance contract should be construed most favorably for the insured, and the words must be given their usual and ordinary meaning and that construction cannot be strained in order to perceive any ambiguity.
I find no cases that help in the interpretation of the word “ professional ”. The definition of “ profession ” in Funk & Wagnalls Standard Dictionary is as follows: “1. An occupation that properly involves a liberal education or its equivalent, and mental rather than manual labor; especially one of the *699 three learned professions. 2. Hence, any calling or occupation involving special mental and other attainments or special discipline, as editing, acting, engineering, authorship, etc.; also the collective body of those following such vocation.” Other definitions are of the same general import.
A recent article in the New York Times magazine section, dated December 9, 1956, page 50, on “ Decorator of an Bra ” stated as follows: “ Miss de Wolfe, later Lady Mendl, who died in 1950, is credited with being the country’s first woman decorator and the founder of the modern decorating profession.”
I therefore find that the plaintiff was no ordinary interior decorator, but a designer of interior decorations. The distinction is one of education, training and experience, and the nature of the work performed. The plaintiff, under the tests and definitions given must be considered as engaged in the profession of decorating and a professional man.
The second question is as to the materials and items damaged, whether they are within the category of “ professional books, instruments and other professional equipment,” and the third question concerns the amount of damages. These questions will be considered together.
The first item of damage is 34 so-called ‘ ‘ 3-dimensional representations ” valued by the plaintiff at $50 each. These representations are drawings made of various interiors showing all walls, floors and ceilings, together with the materials to be used and color in the actual colors recommended by the plaintiff. The plaintiff testified that these representations were drawn by his draftsmen under his instructions in order to show prospective clients what the room, office, theatre, etc., would look like when completed. The plaintiff, after preparing these representations, kept them for future reference in order to show to new clients, and they therefore had a value in his profession. The cost was estimated at from $50 to $250 each. I am of the opinion that they are part of his professional equipment, but have a nominal value, and therefore value them at $25 each, or a total of $850.
The second item of damage was 38 fabric samples, surely essential to the plaintiff as professional tools or equipment. The plaintiff claims he purchased the samples, which were large pieces of fabric, and produced some invoices. Based on his invoices and checks, I find same valued at $95.
The third item of damage was three dozen pillows, some used in the plaintiff’s home and some in the studio. I find a value of pillows damaged, based on the testimony, at $40.
*700 The fourth item was two cartons of wallpaper, which must be considered as professional equipment. The plaintiff testified that after the flood he took all the damaged wallpaper and placed it in two cartons, and put a value of $500 on same. The testimony as to the quality and the value is sketchy. There are some checks and invoices. This wallaper consisted of various samples and sample books. Based on the evidence, checks and invoices, I find the value to be $200.
The fifth item was three file cabinets, also considered as professional equipment. Based on the testimony, I find the amount of damage to be in the sum of $80.
The sixth item was a fur rug. The testimony as to value was unsatisfactory. This rug, the plaintiff testified, was made from selected furs by a professional rug maker, and he placed its value at $400. I have only placed thereon a nominal value of $25.
The seventh item was carpet samples, which must be considered as professional tools and equipment, and was valued by the plaintiff in the sum of $370. Based on checks and invoices, I find a value of those damaged at $302.
The eighth item is stationery in the amount of cost of $400.
•There was no substantiation for that value whatsoever, so that no consideration is given as to that item.
The ninth item is professional magazines. The plaintiff testified that he purchased many popular and professional magazines having to do with the interior of buildings, and kept them as a library. The plaintiff was uncertain as to the number and indefinite as to the actual cost of many items of such loss. I place the value of the damaged magazines at $75.
I therefore find judgment for the plaintiff in the total sum of $1,667, and direct the clerk to enter judgment accordingly.
Ten days’ stay. Thirty days to make a case.